**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amanda Hoyt, | No. CV-25-01807-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Board of Regents, | |
| Defendant. | |

Amanda Hoyt ("Plaintiff") alleges that her former employer, the Arizona Board of Regents ("Defendant"), violated the Americans with Disabilities Act ("ADA") in two distinct respects. Now pending before the Court is Defendant's motion to dismiss one of Plaintiff's ADA claims based on a lack of administrative exhaustion. (Doc. 11.) For the reasons that follow, the motion is denied.

## BACKGROUND

I.    <u>Factual Allegations</u>

The following factual allegations, presumed true, are derived from Plaintiff's operative pleading, the First Amended Complaint ("FAC"). (Doc. 8.)

At all relevant times, Plaintiff "suffered from the diagnosed disability of Crohn's disease" and was an employee of Defendant. (*Id.* ¶¶ 4, 5(a).) Defendant is the "governing body of Arizona's public university system." (*Id.* ¶ 6(a).)

In September 2015, "Defendant hired [Plaintiff] as a chemical safety specialist for its Arizona State University Schools of Engineering." (*Id.* ¶ 11.) In November 2021,

Defendant promoted Plaintiff to "Laboratory Safety Inspector." (*Id.*) Plaintiff "informed Defendant that she has a disability when she was hired in September of 2015 and after each subsequent promotion." (*Id.*)

In December 2022, "Defendant informally accommodated [Plaintiff] permitting her to work from home and come into the office on an as needed basis." (*Id.* ¶ 12.) In December 2023, Plaintiff's supervisor, Rita Bottesch ("Bottesch"), "requested that [Plaintiff] formalize her informal work from home accommodation." (*Id.* ¶ 13.)

On January 8, 2024, Plaintiff "formally requested the accommodation of work from home as needed and requested 2-hours' advanced notice when she was needed in the office. [Plaintiff] indicated she would follow up with medical documentation to support her requested accommodation." (*Id.* ¶ 14.)

On January 10, 2024, Bottesch ordered Plaintiff "to take FMLA leave if not physically present in the office and allowed [Plaintiff] to work from home one day per week on Tuesdays." (*Id.* ¶ 15.)

On January 11, 2024, Plaintiff began taking FMLA leave. (*Id.* ¶ 16.)

On January 16, 2024, Plaintiff's "gastroenterologist provided medical documentation to support her requested accommodation," and Plaintiff "also requested alternative accommodation of an office space with a private bidet, toilet and sink with the bathroom being five seconds' distance from her office." (*Id.*) That same day, Plaintiff also "requested her performance evaluation," but "Bottesch never responded to [Plaintiff]'s request for evaluation because [Plaintiff] requested accommodation." (*Id.* ¶ 22.) Plaintiff alleges that Bottesch "was retaliating" against her. (*Id.*)

On January 23, 2024, "Defendant denied [Plaintiff]'s accommodation deeming both alternatives to pose an undue hardship." (*Id.* ¶ 17.) Plaintiff alleges that this was not true because "Defendant had another disabled employee who was permitted to work from home four-days per week," and "Defendant also had underutilized bathroom space." (*Id.*) Defendant instead offered one work-from-home day per week and offered to "purchase a travel bidet to use at the bathroom available to everyone as needed while [Plaintiff] was in

office and/or on-site visits." (*Id.*)  Plaintiff alleges "[t]his alternative accommodation was unreasonable." (*Id.* ¶ 18.)

After Plaintiff formally requested accommodation, "Bottesch cancelled [Plaintiff]'s one-on-one meetings," and Plaintiff "was only able to meet with Bottesch on February 22, 2024." (*Id.* ¶ 20.)  "Bottesch began to falsely claim that she had concerns with [Plaintiff]'s performance which really was caused because Bottesch would not meet with [Plaintiff] one-on-one." (*Id.* ¶ 21.)

On February 22, 2024, Plaintiff "submitted a second ADA request, the toilet accommodation or to work intermittently from home as needed." (*Id.* ¶ 23.)  That same day, "in retaliation, Bottesch instituted a new requirement" that required Plaintiff to document the work she performed each day, including the amount of time it took her to perform tasks. (*Id.* ¶ 24.)  "No others were required to document time as [Plaintiff]." (*Id.*)

After February 22, 2024, "Bottesch continued to cancel [Plaintiff]'s one on one meetings and falsely claim [Plaintiff]'s performance was suffering." (*Id.*)  Bottesch also "demonstrated a disability bias towards the other disabled employee who worked from home calling him 'lazy' and stated that 'he should have to come into work like the rest of us.'" (*Id.*)

On February 27, 2024, Defendant denied Plaintiff's second ADA request, "claiming once again that it posed an undue hardship." (*Id.* ¶ 23.)  Plaintiff again alleges that the undue-hardship claim was untrue because another employee worked from home four days per week and because Defendant had underutilized bathroom space. (*Id.*)

On April 28, 2024, Plaintiff "discovered that the ingress and egress to her office had been blocked, a clear indication that Defendant did not intend for [Plaintiff] to return to work." (*Id.* ¶ 25.)

On May 21, 2024, Plaintiff made a third ADA request, again asking for the same bathroom accommodation or permission to work from home. (*Id.* ¶ 26.)  Plaintiff also "requested short term disability which Defendant ignored." (*Id.*)  Defendant "summarily denied [Plaintiff]'s third request for accommodation without engaging in an interactive

process or granting short term disability." (*Id.*)

In June 2024, "Defendant informed Plaintiff her FMLA was exhausted and gave Plaintiff three options: (1) return to work full time in office; (2) if unable to return, participate in a 30-day job search; or (3) voluntarily resign." (*Id.* ¶ 27, cleaned up.) Plaintiff declined the three options. (*Id.* ¶ 28.)

On July 25, 2024, Defendant terminated Plaintiff for absenteeism. (*Id.*)

II.    Procedural History

On May 15, 2024, Plaintiff filed a charge of discrimination with the EEOC, checking boxes indicating that she was alleging "disability" discrimination that was "continuing action." (Doc. 8 ¶ 31; Doc. 11-1 at 2-4.)

On February 26, 2025, Plaintiff received a right-to-sue letter. (Doc. 8 ¶ 31.)

On May 24, 2025, within 90 days of receiving the right-to-sue letter, Plaintiff initiated this action. (Doc. 1.)

On June 12, 2025, Plaintiff filed the FAC. (Doc. 8.) The FAC asserts two causes of action. Count One is a claim for "Disability Discrimination in violation of 42 U.S.C. [§] 12112." (*Id.* at 7.) Count Two is a claim for "Failure to Accommodate in violation of 42 U.S.C. [§] 12112." (*Id.*)

On July 10, 2025, Defendant filed the pending motion to dismiss Count One. (Doc. 11.) That motion is now fully briefed and neither side requested oral argument. (Docs. 12, 13.)

**DISCUSSION**

I.    Legal Standard

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A]ll well-pleaded allegations of

material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1444-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II.    <u>Consideration Of Documents Outside The Pleadings</u>

Defendant attached two documents to its motion. The first is Plaintiff's EEOC charge of discrimination. (Doc. 11-1.) The second is Plaintiff's rebuttal letter to Defendant's EEOC position statement. (Doc. 11-2.)

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). For materials incorporated by reference, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder*, 450 F.3d at 448. A court may also "take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

The EEOC charge of discrimination (Doc. 11-1) may be considered because it is incorporated by reference. The FAC refers to the document (Doc. 8 ¶ 31 ["[Plaintiff] timely filed a charge of discrimination with the EEOC under charge number 549-2024-02963 concerning discrimination under then ADA as described above."]); the charge is

1    central to Plaintiff's claims, given the administrative exhaustion requirement; and no party

2    questions the authenticity of the document attached to the motion.

3            Plaintiff's rebuttal letter (Doc. 11-2) may be considered because it is a judicially

4    noticeable matter of public record. "Courts regularly take judicial notice of certain EEOC

5    documents." *Doria v. Yelp Inc.*, 2024 WL 1740015, *3 (D. Ariz. 2024). *See also Bracken*

6    *v. Welborn*, 2021 WL 237693, *10 (M.D. La. 2021) ("Defendant acknowledges that, 'to

7    the extent the documents attached by Ms. Bracken are contained in the EEOC Charge file

8    (i.e., Defendant's Statement of Position to the EEOC and Bracken's rebuttal), they are

9    public records, are authentic and unopposed, subject to judicial notice and, thus, can be

10   considered by the court' in this Rule 12(c) without converting it to a motion for summary

11   judgment.").

12           Defendant also included, as an attachment to its reply brief, "an unsigned and

13   unverified amended charge" purportedly drafted by Plaintiff.  (Doc. 13 at 2; Doc. 13-1 at

14   2-3.)  The reply brief asserts that this document was included in Plaintiff's EEOC file,

15   which Defendant "received . . . pursuant to [a] FOIA request" at some point after the motion

16   to dismiss was filed.  (Doc. 13 at 2.)

17           On the one hand, courts often—but not always—find that documents contained

18   within a claimant's EEOC file are subject to judicial notice because they qualify as public

19   records whose authenticity can't be questioned.  *See, e.g.*, *Woods v. Delta Air Lines, Inc.*,

20   2025 WL 966922, *6 (N.D. Tex. 2025) ("The record reflects that Delta obtained a copy of

21   Woods's EEOC Investigative File, via a Freedom of Information Act ('FOIA') request to

22   EEOC's Dallas District Office. . . .  [T]he charge number, 410-2023-03162, is correctly

23   cited, and the 147 pages of documents provided all relate to 'Ms. Margaret M. Woods.' . . .

24   In her response, Woods does not question the authenticity of the EEOC records attached to

25   the motion, nor does she raise any objections to their accuracy.  Therefore, even though

26   not referred to in Woods's complaint, the undersigned finds that the Court, in its discretion,

27   may take judicial notice of Woods's EEOC records in deciding Delta's Rule 12(b)(6)

28   motion.") (citations omitted).  *But see Brown v. Institute For Family Centered Servs., Inc.*,

394 F. Supp. 2d 724, 728 n.2 (M.D.N.C. 2005) ("In deciding a Rule 12(b)(6) motion, the court may consider the complaint and documents attached to the complaint, referred to in the complaint, and relied upon by Plaintiff in bringing the action.  The court may also consider matters subject to judicial notice. . . .  Plaintiff's affidavit and the EEOC file, however, do not fit into one of the aforementioned categories.").  On the other hand, the record is insufficiently developed to establish that the document attached to Defendant's reply is, in fact, contained within Plaintiff's EEOC file.  The reply brief was not accompanied by a declaration avowing that the document is an authentic copy of a document that the EEOC produced in response to a FOIA request.  Instead, the only assertion to that effect is set forth in the reply brief.  Although the Court has no reason to question the veracity of that assertion, "arguments and statements of counsel are not evidence."  *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (cleaned up).  Additionally, because the document was filed for the first time as an attachment to a reply brief, Plaintiff has not been heard on whether she disputes its authenticity.  *Compare Woods*, 2025 WL 966922 at *6 ("In her response, Woods does not question the authenticity of the EEOC records attached to the motion, nor does she raise any objections to their accuracy.").  Under these circumstances, the Court cannot take judicial notice of the document.[1]

Last, Plaintiff provided an affidavit as an exhibit to her response brief.  (Doc. 12-1.)  In the affidavit, Plaintiff argues that all of the factual assertions within her affidavit "are subject to judicial notice because [she] submitted them to the EEOC."  (*Id.*)  The affidavit is intended to establish additional facts regarding the scope of the EEOC's investigation into Plaintiff's charge.  (Doc. 12 at 3.)  Defendant opposes Plaintiff's attempt to rely on this affidavit, arguing that "[t]he affidavit was not attached to the complaint, it was not incorporated by reference, and it is not appropriate to take judicial notice of a declaration by the Plaintiff."  (Doc. 13 at 5.)

Defendant has the better of this issue.  "Courts regularly decline to consider

---

[1]    The Court also clarifies that the outcome here would have been the same even if it had considered the unsigned amended charge as part of the exhaustion analysis.

1  declarations and exhibits submitted in support of or opposition to a motion to dismiss . . .

2  if they constitute evidence not referenced in the complaint or are not a proper subject of

3  judicial notice." *Bryant v. Anthem Cos., Inc.*, 2024 WL 5275505, *3 (C.D. Cal. 2024)

4  (cleaned up). The affidavit is not incorporated by reference into the FAC and is not subject

5  to judicial notice, as it is not a matter of public record. Thus, Plaintiff's request for judicial

6  notice of the affidavit is denied.

7  III.    Exhaustion Of Administrative Remedies

8          A.    **The Parties' Arguments**

9          Defendant argues that Plaintiff failed to exhaust her administrative remedies as to

10  Count One of the FAC, her claim of discriminatory treatment under the ADA, because her

11  charge of discrimination only asserted a failure-to-accommodate claim. (Doc. 11 at 1-2.)

12  Defendant argues that "failure to accommodate claims are not like and related to other

13  discriminatory treatment claims under the ADA" and cites cases from the Fifth, Sixth,

14  Seventh, and Tenth Circuit to support that argument. (*Id.* at 3-4.) Defendant also argues

15  that "a solitary, vague reference to an arguably separate allegation in a supplemental

16  document, such as a rebuttal, does not exhaust administrative remedies if it is not like and

17  related or reasonably expected to grow out of the investigation into the original

18  allegations." (*Id.* at 3.) Defendant argues that "Plaintiff did not present the EEOC with an

19  opportunity to investigate anything other than her allegations of failure to accommodate"

20  and that "[t]he charge does not even contain a hint of other allegations." (*Id.* at 4.)

21  Defendant concludes that "Plaintiff has not exhausted any claim in this case other than the

22  failure to accommodate claim." (*Id.* at 5.)

23          In response, Plaintiff argues that although her charge of discrimination did not

24  expressly reference any acts of intentional discrimination, this is because those acts had

25  not yet occurred at the time she filed her charge and an investigation into those acts would

26  thus be "reasonably expected to grow out of the charge." (Doc. 12 at 2-3.) Plaintiff also

27  emphasizes that she "indicated on her charge that Defendant's discrimination was a

28  continuing violation"; that the EEOC "interviewed Plaintiff . . . after her termination"; and

1   that "Defendant admitted that Plaintiff referenced her termination in her EEOC rebuttal."

2   (*Id.* at 3.)  Plaintiff further argues that a copy of the EEOC's file will demonstrate that she

3   "submitted recordings and other evidence of the new allegations as part of the

4   investigation," although "[t]he parties need not wait to view the contents of the EEOC file

5   given the holding of [*Sosa v. Hiraoka*, 920 F.2d 1451 (9th Cir. 1990)] which establishes

6   that Plaintiff's allegations were administratively exhausted because the allegations

7   occurred after Plaintiff filed her charge."  (*Id.*)  Next, and seemingly in the alternative,

8   Plaintiff argues she "may rely upon allegations in the FAC not included in the EEOC

9   charge because they establish intentional discrimination."  (*Id.*)  Specifically, Plaintiff

10  argues that "[a]rguendo that the allegations not included [in] Plaintiff's EEOC charge are

11  untimely, Plaintiff may rely upon untimely allegations of discrimination to prove

12  intentional discrimination."  (*Id.* at 3-4.)

13          In reply, Defendant raises four arguments.  (Doc. 13 at 2.)  First, Defendant argues

14  that Plaintiff's EEOC file (which Defendant recently obtained via a FOIA request) fails to

15  support Plaintiff's exhaustion arguments because it only contains an "unverified and

16  unsigned amended charge," which is insufficient, and because it "did not include any

17  recordings."  (*Id.*)  Second, Defendant again argues that the allegations in Count One "are

18  not like and related or expected to grow out of a reasonable investigation into the

19  allegations contain[ed] in Plaintiff's EEOC charge" and disputes Plaintiff's assertion "that

20  any allegations that occurred after the filing of the charge is necessarily like and related to

21  the allegations in the charge itself."  (*Id.* at 4.)  Third, Defendant argues that "Plaintiff's

22  argument about using unexhausted allegations to support exhausted allegations is not in

23  dispute or relevant."  (*Id.*)  Fourth, as noted, Defendant argues that the Court should

24  disregard the affidavit attached to Plaintiff's response.  (*Id.* at 5.)

25          B.    **Analysis**

26          There is a strong argument that Defendant's exhaustion argument is premature.

27  Title I of the ADA, which governs employment-related disability discrimination claims

28  (such as the claim asserted in Count One of the FAC), incorporates the charge-filing

requirements in Title VII of the Civil Rights Act of 1964. *Zimmerman v. Oregon Dep't of Just.*, 170 F.3d 1169, 1177-78 (9th Cir. 1999) ("Title I . . . incorporates Title VII's charge requirement.).  Before 2019, the Ninth Circuit characterized Title VII's administrative exhaustion requirement as "jurisdictional" in nature.  *See e.g.*, *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) ("In order to establish subject matter jurisdiction over her Title VII claim, Plaintiff was required to exhaust her administrative remedies.").  As a result, before 2019, a defendant in the Ninth Circuit could seek dismissal of a Title VII claim based on a lack of exhaustion under Rule 12(b)(1), and both sides could submit materials outside the pleadings to establish exhaustion (or a lack thereof).  *See, e.g.*, *Bill v. Berkely United Sch. Dist.*, 2004 WL 2075447, *2 n.6 (N.D. Cal. 2004) ("The Court may properly examine this extra-pleading material because . . . Plaintiff asserts discrimination and retaliation claims under Title VII . . . and the District has challenged the Court's subject matter jurisdiction over this claim . . . .  For motions to dismiss under Rule 12(b)(1), unlike a motion under Rule 12(b)(6), the moving party may submit affidavits or any other evidence properly before the court.") (cleaned up).  However, in 2019, the Supreme Court overruled the Ninth Circuit's treatment of "Title VII's charge-filing requirement [as] jurisdictional" and concluded that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."  *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 547, 551 (2019).  Accordingly, whether a plaintiff in a Title VII action—and, in turn, a plaintiff in a Title I ADA action—has "timely exhausted her administrative remedies is an affirmative defense, so the defendant bears the burden of pleading and proving it."  *Kraus v. Presidio Trust Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009) (cleaned up).

"If a lack of administrative exhaustion is an affirmative defense that a" Title I ADA defendant "bears the burden of pleading and proving, it is difficult to see how that defense is properly raised via a Rule 12(b)(6) motion to dismiss."  *Fox v. MHM Health Professionals LLC*, 2024 WL 4364133, *15 (D. Ariz. 2024).  In other contexts in which a

failure to exhaust administrative remedies is considered an affirmative defense, the Ninth Circuit has held that "such a defense should generally be raised on summary judgment. A defendant may raise the defense under Rule 12(b)(6) [only] in the rare event that a failure to exhaust is clear on the face of the complaint." *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 909 n.6 (9th Cir. 2020) (cleaned up) (applying this rule in an action under the Individuals with Disabilities Education Act). *See also Albino v. Baca*, 747 F.3d 1162, 1168-70 (9th Cir. 2014) (en banc) (concluding that "an unenumerated motion under Rule 12(b) is not the appropriate procedural device for pretrial determination of whether administrative remedies have been exhausted under the [Prisoner Litigation Reform Act]" and that although "[i]n a few cases, a prisoner's failure to exhaust may be clear from the face of the complaint," "a motion for summary judgment, as opposed to an unenumerated Rule 12(b) motion," is usually the appropriate way "to decide exhaustion"); *Vasquez v. Kiewit Infrastructure W., Co.*, 2020 WL 2842671, *6 (D. Haw. 2020) (concluding, where the plaintiff asserted an ADA disability discrimination claim against her employer, that "administrative exhaustion requires a detailed examination of fact . . . and such an inquiry is not suitable for review in a 12(b)(6) motion"). Here, it is not "clear from the face of the complaint" that Plaintiff failed to exhaust her administrative remedies. To the contrary, the FAC alleges that "[Plaintiff] timely filed a charge of discrimination with the EEOC . . . concerning discrimination under the[] ADA as described above." (Doc. 8 ¶ 31.)

Nevertheless, even assuming a more searching factual inquiry into the question of exhaustion is warranted at this early stage of the case, Defendant is not entitled to dismissal. As noted, a plaintiff wishing to bring an employment-related ADA claim must first file a timely charge with the EEOC. *Josephs v. Pac. Bell*, 443 F.3d 1050, 1053 (9th Cir. 2005). The scope of the resulting court action "depends upon the scope of both the EEOC charge and the EEOC investigation." *Sosa*, 920 F.2d at 1456. *See also Vasquez*, 2020 WL 2842671 at *5 ("The Ninth Circuit Court of Appeals has adopted an expansive policy that allows for a finding of exhaustion as to all allegations of discrimination that either fell within the scope of the EEOC's actual investigation or an EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination . . . .  The inquiry is broad in scope and requires a determination of: (1) whether the agency actually did investigate the type of claim that is deficient on the face of the charge of discrimination; or (2) whether the agency should have investigated the type of claim that is deficient in the charge of discrimination.") (cleaned up).

Although Plaintiff's charge of discrimination filed with the EEOC on May 15, 2024 does not contain any factual allegations regarding the alleged acts of discrimination detailed in Count One of the FAC (Doc. 11-1 at 2-4), this omission does not necessarily preclude a finding of exhaustion.  As noted, "[t]he exhaustion analysis . . . doesn't stop with the EEOC charge form.  The Court also must assess whether the current charges fall within the scope of the EEOC's actual investigation or an investigation which can reasonably be expected to grow out of the charge." *Petty v. Circle K Stores Inc.*, 2020 WL 1236343, *11 (D. Ariz. 2020) (cleaned up).

In Plaintiff's rebuttal letter to Defendant's EEOC position statement (Doc. 11-2), Plaintiff stated that "ASU has now dismissed [Plaintiff] for unapproved absenteeism.  This is pretext.  The real reason ASU fired [Plaintiff] was because it refused to grant her a reasonable accommodation."  (*Id.* at 7.)  In another portion of her rebuttal letter, Plaintiff stated that "Respondent's claim that there had been a decline in Complainant's job performance is pretext.  If there had been a decline in [Plaintiff]'s performance, why did she get an end-of-the-year performance increase on her salary?"  (*Id.* at 6.)  These references raise at least an inference that the EEOC's investigation ultimately expanded beyond the allegations of accommodation addressed in Plaintiff's charge to encompass the allegations of discrimination set forth in the rebuttal letter.  *See, e.g.*, *Waithe v. Cardinal Cushing Centers, Inc.*, 800 F. Supp. 3d 217, 225 (D. Mass. 2025) ("The Court will also consider as exhausted Waithe's claim of retaliation under Title VII because, although not alleged in the initial charge, it was included in Waithe's rebuttal to Cardinal's position statement"); *Huda v. Lockheed Martin*, 2008 WL 191300, *3 (E.D. La. 2008) ("Regarding the non-promotion claim, in his rebuttal letter, Plaintiff states that he had 'several

documented meetings' with Lockheed executives regarding discrimination in the workplace 'related to promotion, [and] job assignment.' . . .  Based on these representations, this Court finds that a reasonable EEOC investigation would have reached this claim.").

These details also distinguish this case from the out-of-circuit authorities on which Defendant relies.  Putting aside that none of those cases resolved the issue of exhaustion via the Rule 12(b)(6) motion, the plaintiffs in those cases did not argue (let alone come forward with evidence) that they had raised additional allegations of actionable mistreatment in a rebuttal letter submitted to the EEOC following the submission of the initial charge.  Instead, the exhaustion analysis in each case addressed whether a failure-to-accommodate claim should be deemed administratively exhausted based solely on the submission of a charge of discrimination that alleged disparate treatment.  *Hamar v. Ashland, Inc.*, 211 F. App'x 309, 310 (5th Cir. 2006) ("[Plaintiff] argues that from this charge, which asserts only a disparate treatment claim, an investigation into Ashland's failure to accommodate his disability could reasonably have been expected to grow.  But the scope of Hamar's administrative charge is too narrow to have exhausted a claim for failure to accommodate."); *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853-54 (6th Cir. 2000) ("The written charge specifically alleged only a termination claim. . . .  Jones's claim of failure to accommodate could not reasonably be expected to grow out of her initial charge of discrimination.); *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) ("Green neglected to make a 'failure to accommodate' argument in her EEOC charge, and we fail to understand how she could expect that her claim that she suffered from inadequate working conditions would develop from the investigation of the reasons for her discharge."); *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 n.13 (10th Cir. 2005) ("[B]ecause MacKenzie failed to allege a failure to accommodate claim in her original EEOC charge, she failed to exhaust her administrative remedies as to this claim and it is dismissed.").

The Court does not foreclose the possibility that the EEOC may have in fact declined

1    to expand the scope of its investigation to include the discrimination-termination issue

2    raised in Plaintiff's rebuttal letter.  Nevertheless, at this early stage of the case, and with a

3    record that is less than fully developed as to what occurred during the administrative

4    proceedings, dismissal is unwarranted.[2]

5        Accordingly,

6        **IT IS ORDERED** that Defendant's motion to dismiss (Doc. 11) is **denied**.

7        Dated this 21st day of January, 2026.

8

9

10

11                                                    Dominic W. Lanza
                                                      United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25    _____

26    [2]      Plaintiff identifies two additional reasons why she should be deemed to have
      exhausted her discrimination claim despite failing to mention it in her EEOC charge.  (Doc.
27    12 at 2 [arguing that "allegations . . . occurring after Plaintiff filed her EEOC are reasonably
      related to her EEOC charge"]; *id.* at 3 [arguing that "Plaintiff may rely upon allegations in
28    the FAC not included in the EEOC charge because they establish intentional
      discrimination"].)   The conclusions above obviate the need to resolve these alternative
      arguments.